

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ✦ F. 718.263.9598

September 3, 2019

**Via ECF**
The Honorable District Judge J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Amay, et al. v. Colgate Enterprise Corp., et al.**
**19-CV-2651 (JPO)**

Dear Judge Oetken:

We represent the Plaintiffs in the above-referenced matter and we submit this joint letter motion on behalf of both parties seeking approval of the Settlement Agreement (attached hereto as Exhibit 1) ("the Agreement") as fair and reasonable. The parties analyze the factors articulated in *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) as a basis for the Agreement's approval.

**The *Wolinsky* Factors**[1]

**1. The Plaintiffs' range of possible recovery:**

Plaintiffs were two former employees of Defendants and alleged that they were employed by Defendants for approximately six months. Plaintiffs alleged that they regularly worked in excess of forty (40) hours per week and while they were compensated for some overtime premium pay, they alleged that they were not compensated for approximately ten (10) hours of overtime pay per week, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

---

[1] The analysis herein focuses on the *Wolinsky* factors as pertinent to the parties to this Agreement, to wit, Defendants and the named Plaintiffs, to wit, Henry Oswaldo Amay and Elsin Armando Amay. Although the Complaint (¶¶ 88-99) alleged the existence of a "Collective Class" of former and current employees of Defendants, Defendants denied these allegations (Answer, ¶¶ 88-99), and discovery did not proceed far enough to prove or disprove these allegations. To the extent that considerations pertaining to a putative Collective Class comprised of former or current employees of Defendants factor into the Court's assessment of the fairness of this Settlement Agreement, the parties note that the Agreement compromises only the claims of the named Plaintiffs. Indeed, the provision in Section 3 of the Agreement precluding the named Plaintiffs from participating in a prospective class or collective action presupposes that any such putative collective class would still be able to bring an action against Defendants, this Agreement notwithstanding.

Plaintiffs' combined calculation of damages was approximately $68,600.00, which included approximately $24,300.00 in unpaid wages, approximately $24,300.00 in liquidated damages and approximately $10,000.00 in alleges statutory penalties for failure to provide proper wage notices and wage statements pursuant to NYLL.

Defendants maintain that all hours worked by Plaintiffs are properly accounted for in Defendants' records and that Plaintiffs were properly compensated for all hours worked, including overtime hours, in compliance with the FLSA and NYLL. Defendants deny liability for alleged failure to provide wage notices and statements pursuant to the NYLL because they furnished wage notices and statements as required. Even assuming, arguendo, that Defendants did not furnish wage notices and/or statements as required, Defendants are entitled to a defense to these claims pursuant to NYLL §198(1-b)(i) and (1-d)(i) inasmuch as Defendants fully paid all wages due to Plaintiffs in timely fashion.

As such, a *bona fide* dispute existed as to the number of hours worked by Plaintiff.

In light of the above, Plaintiff's range of possible recovery was $0.00 to $68,600.00. The parties reached an agreement to settle this matter for $31,000.00 – an amount that falls squarely in the range of possible recovery for Plaintiffs and an amount that is reasonable in light of the records maintained by Defendants and their potential defenses.

As each Plaintiff worked for Defendants for the same time period, worked approximately the same number of hours each week, and received the same pay, each Plaintiff will receive an equal portion of the settlement proceeds after attorneys' fees and expenses.

**2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

The parties still had to conduct party depositions and depositions of a number of non-party witnesses. Furthermore, although the parties had an informal exchange of documents in advance of the mediation, the parties had yet to serve responses to interrogatories and document demands. The parties also faced significant expenses in preparing for and conducting a trial should they have not settled.

Plaintiffs would have needed to take multiple days off from their current jobs and Plaintiffs would have incurred significant expenses preparing exhibits for trial and hiring court-licensed translators for Plaintiffs.

**3. The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all of their claims, Plaintiffs recognized the risks of losing at trial and not recovering anything from Defendants. The seriousness of this risk favored the settlement for Plaintiffs. Defendants also faced the risks of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

**4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement talks for approximately three months prior to reaching a settlement at the August 13, 2019 court-annexed mediation. With the assistance of a mediator who specializes in FLSA and NYLL matters, the parties were able to reach a settlement after approximately three hours of negotiations.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of months'-long arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality provisions or release of claims unrelated to the wage-and-hour claims asserted in this matter.

**5. The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

**Attorneys' Fees**

The parties agreed to settle this matter for a global settlement of $31,000.00.

Plaintiffs' counsel respectfully requests $502.00 for identifiable expenses, which includes: the Southern District of New York filing fee ($400.00) and the costs of serving the Defendants through their process server, Anke Judicial Services ($95.00), and postage fees ($7.00).

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($30,498.00), or approximately $10,166.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore the total amount to be paid to the attorneys in this matter, including reimbursement of expenses, is $10,668.00.

Plaintiffs' attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). The Court in *Cheeks* did not assert that the Court needs to approve the attorney fee agreement in each FLSA case. The Court there denied the attorneys' fees because the attorneys were seeking to recover between 40 and 43.6% of the total payment with no justification as to why the attorneys would be entitled to an amount larger than the norm. *Cheeks v. Freeport Pancake House, Inc.,* 796 F3d 199, 206 (2d Cir 2015), *citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015).

Here, Plaintiffs' counsel is requesting attorneys' fees in the amount of one-third of the settlement total, pursuant to the retainer agreement entered into with the client. Since one-third is the standard amount allowed to attorneys in FLSA cases, and the Plaintiff entered into a contract for this amount with their counsel, this amount is not unreasonable, and *Cheeks* does not disagree.

In closing, the parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement.

We thank Your Honor for his continued consideration on this matter.

Respectfully submitted,

/s/
Roman Avshalumov, Esq.
James O'Donnell, Esq.
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road
Suite 601
Kew Gardens, New York 11415
(T): 718-263-9591